NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-475                                      Appeals Court

ELEANOR CALLAHAN  vs.  BOARD OF APPEAL ON MOTOR VEHICLE
         LIABILITY POLICIES AND BONDS & another.[1]


No. 15-P-475.

Suffolk.      February 1, 2016. - September 12, 2016.

Present:  Cohen, Carhart, & Kinder, JJ.


Board of Appeal on Motor Vehicle Liability Policies and Bonds.
    Motor Vehicle, Board of Appeal on Motor Vehicle Liability
    Policies and Bonds, Operating under the influence, License
    to operate, Homicide.  Registrar of Motor Vehicles,
    Revocation of license to operate.  License.  Administrative
    Law, Decision.



    Civil actions commenced in the Superior Court Department on
March 31, 2011, and January 21, 2014.

    After consolidation, the case was heard by Edward P.
Leibensperger, J., on a motion for judgment on the pleadings,
and a motion to dismiss was also heard by him.


    Martin P. Desmery for the plaintiff.
    Robert L. Quinan, Jr., Assistant Attorney General, for the
defendants.




    [1] Registrar of Motor Vehicles.

COHEN, J.  The plaintiff sought judicial review of a decision of the Board of Appeal on Motor Vehicle Liability Policies and Bonds (board) denying her application for reinstatement of her driver's license.  On cross motions for judgment on the pleadings, a judge of the Superior Court ruled in favor of the board, and the plaintiff appealed to this court. The plaintiff argues that the board erred in determining that her 1989 conviction of "driving while ability is impaired," in violation of the New York State Vehicle Traffic Law (VTL), is "substantially similar" to a Massachusetts conviction of operating a motor vehicle while under the influence of intoxicating liquor (OUI), thereby subjecting her to lifetime revocation of her driver's license as a result of her subsequent conviction of motor vehicle homicide while OUI.  The plaintiff also argues that the board lacked the authority to reconsider an earlier decision granting her a restricted, hardship license. For the reasons that follow, we affirm.

Background.  The relevant facts are drawn from the administrative record and are not disputed.  On October 30, 1988, the plaintiff was charged in Lewisboro, New York, with driving while intoxicated per se, pursuant to VTL § 1192.2; driving while intoxicated, pursuant to VTL § 1192.3; and driving left of the pavement marking, pursuant to VTL § 1126a.  These charges were resolved on January 23, 1989, when the plaintiff

pleaded guilty to the lesser charge of "driving while ability is impaired" (DWAI), in violation of VTL § 1192.1, and was assessed a fine of $250. According to a document entitled "Certificate of Conviction," issued by the Justice Court in Lewisboro, the plaintiff's guilty plea to DWAI resulted "in full satisfaction of all charges."

On January 6, 1998, while driving under the influence of alcohol in Boxboro, Massachusetts, the plaintiff's vehicle struck and pushed a parked motor vehicle, causing it to hit a passenger who had just stepped out of that vehicle; the passenger later died of her injuries. The Boxborough police promptly filed an "immediate threat complaint" with the Registrar of Motor Vehicles (registrar), which resulted in the indefinite suspension of the plaintiff's driver's license. On April 6, 1999, the plaintiff pleaded guilty to homicide by motor vehicle while OUI, in violation of G. L. c. 90, § 24G. She received a sentence of two and one-half years in the house of correction, one year to be served and the balance suspended during a ten-year probationary term. Thereafter, in accordance with G. L. c. 90, § 24(1)(c)(4), as amended through St. 1982, c. 373, § 4,[2] the registrar imposed a lifetime revocation of the plaintiff's driver's license, effective June 7, 1999.

---

[2] The plaintiff does not dispute that § 24(1)(c)(4) has been in effect at all times relevant to this case. Accordingly, any

The operative language of § 24(1)(c)(4) is convoluted: "[N]o new license shall be issued or right to operate be reinstated by the registrar to any person convicted of a violation of [OUI] . . . at any time after a subsequent conviction of such an offense, whenever committed, in case the registrar determines in the manner aforesaid that the action of such person, in committing the offense of which he was so subsequently convicted, caused an accident resulting in the death of another." However, its meaning is not in doubt. As explained in Stockman v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 62 Mass. App. Ct. 159 (2004), the statute prohibits the registrar from reinstating the driving privileges of any individual with "two convictions of driving while intoxicated, coupled with a determination by the registrar that the second commission of that offense ('the action of such person, in committing the offense of which he was so subsequently convicted') caused a fatal accident." Id. at 161.

After completing probation, the plaintiff applied for reinstatement of her license. The registrar denied the application, and, following a hearing, the board affirmed. The

_____

confusion resulting from what the Supreme Judicial Court has characterized as a "clerical error" in St. 2005, c. 122, § 6A, known as Melanie's Law, is of no concern here. See Commonwealth v. Maloney, 447 Mass. 577, 584 (2006). See also Burke v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 90 Mass. App. Ct.    (2016).

plaintiff then sought review in the Superior Court, pursuant to G. L. c. 30A, § 14.  The first judge to consider the matter vacated the board's decision and remanded for further consideration whether the DWAI guilty plea qualified as a conviction for purposes of G. L. c. 90, § 24(1)(c)(4), and whether the board should exercise discretion to modify the registrar's decision, pursuant to G. L. c. 90, § 28.  After a remand hearing and a period of nearly one year when the case remained under advisement, two members of the three-member panel issued an order dated August 16, 2013, reinstating the plaintiff's right to operate with restrictions.

Within a few weeks, however, and before the reinstatement took effect, the same two members issued a second order, dated September 11, 2013, withdrawing the prior order and scheduling a de novo hearing on the merits.  The second order explained that "one sitting board member was unable to complete deliberations on this matter," and that "justice requires this matter to be heard and decided by a full panel."  A different three-member panel of the board then heard the matter de novo and, in a decision issued December 18, 2013, determined that the requirements for lifetime revocation were met because the New York offense of DWAI was substantially similar to the Massachusetts offense of OUI and qualified as a prior OUI

conviction.[3]  The plaintiff again appealed, and a different Superior Court judge affirmed the board's decision.

Discussion.  As both issues presented are questions of law, our review is de novo; however, we are aided by a thoughtful and thorough decision of the trial court judge.  After independently considering the record and the applicable law, we reach the same result.

1.  Effect of guilty plea to DWAI.  In assessing the impact of the plaintiff's New York guilty plea on her licensure in Massachusetts, we are guided by Bresten v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 76 Mass. App. Ct. 263, 266 (2010) (Bresten).  The court in Bresten held that, pursuant to G. L. c. 90, § 30B,[4] the interstate compact on motor vehicle convictions, even when an out-of-State conviction of driving under the influence is denominated or described differently from the Massachusetts offense of OUI, the registrar must give the

---

[3] The board also determined that it had discretion to modify or annul the registrar's decision, but declined to grant such relief at that time, because the plaintiff had not shown extreme hardship and, at the most recent hearing, had admitted to the occasional use of alcohol.  However, the board did state that the plaintiff was allowed to reapply for relief on or after January 1, 2015.  As no issue is raised as to the propriety of these aspects of the board's decision, we express no opinion on them.

[4] Of particular relevance here is G. L. c. 90, § 30B(III)(a)(1) and (2), relating, respectively, to out-of-State offenses for motor vehicle homicide and driving under the influence of alcohol or drugs.

"the same effect to conduct reported as if 'such conduct had occurred in [Massachusetts],'" so long as the out-of-State offense is "of a substantially similar nature" to OUI.  Id. at 266.

The DWAI offense to which the plaintiff pleaded guilty is codified in VTL § 1192.1, which states: "No person shall operate a motor vehicle while the person's ability to operate such motor vehicle is impaired by the consumption of alcohol."  As recognized by the New York Court of Appeals, the DWAI statute "does not speak of degrees of impairment; it simply prohibits the driving of a motor vehicle when the driver's 'ability to operate such vehicle is impaired.'"  People v. Cruz, 48 N.Y.2d 419, 426 (1979), quoting from VTL § 1192.1.  The statute's manifest purpose is to promote public safety by defining the violation as driving a motor vehicle while there is any alcoholic impairment.

Likewise, the Massachusetts OUI offense, G. L. c. 90, § 24(1)(a)(1), turns on whether the consumption of alcohol diminished the driver's ability to operate a motor vehicle safely, Bresten, supra at 268; again, the statute's manifest purpose is to protect the public by penalizing drivers impaired to any degree by such consumption.  Under the reasoning of Bresten, because both statutes require proof that the motor vehicle operator's ability to operate safely has been affected

even slightly by alcohol, the New York DWAI offense is substantially similar to the Massachusetts offense of OUI, and qualifies as the prior OUI required for the imposition of lifetime license revocation after a subsequent OUI resulting in a fatality.  See id. at 268-269.

The plaintiff attempts to distinguish Bresten on the ground that, unlike the Colorado offense at issue in that case, the New York DWAI offense is categorized as a "traffic infraction."  See VTL § 1193.1(a).  Under VTL § 155, "[a] traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment. . . ."  Thus, according to the plaintiff, because her guilty plea to DWAI did not result in a criminal conviction, it is not substantially similar to OUI and may not serve as a predicate conviction for purposes of imposing a lifetime license revocation.

The plaintiff's argument is not persuasive.  New York's treatment of the DWAI offense suggests that, regardless of its label, it is criminal in character.  Prosecutions for DWAI are generally governed by the rules of criminal law, see People v. Phinney, 22 N.Y.2d 288, 290 (1968), and the consequences of DWAI are identified as "criminal penalties."  See VTL § 1193.  These penalties are not insignificant; they include imprisonment (albeit for no more than fifteen days), a fine, or both.  See

VTL § 1193.1(a). In addition, as was the case here, a charge of DWAI may be resolved by a plea of guilty and will be reported on a "Certificate of Conviction."

Furthermore, the Massachusetts statutes directing the registrar to rely on out-of-State convictions in enforcing the Massachusetts licensing laws are not limited to convictions that are designated as criminal in the State where the offense occurred. At the time of the plaintiff's license revocation, G. L. c. 90, § 24(1)(d) provided that an individual would be considered "convicted" for purposes of various sections of G. L. c. 90, § 24(1), if that individual "pleaded guilty or nolo contendere or was found or adjudged guilty by a court of competent jurisdiction" (emphasis supplied). The disposition of the plaintiff's DWAI charge falls within that definition.[5]

Another statute, G. L. c. 90, § 22(c), also requires that, in certain instances, the registrar must treat an out-of-state "motor vehicle violation" as if it had taken place in

---

[5] Because the plaintiff "pleaded guilty," her reliance on the case of Souza v. Registrar of Motor Vehicles, 462 Mass. 227 (2012) (Souza), is unavailing. The court in Souza held that an admission to sufficient facts was not a qualifying conviction for purposes of imposing a three-year suspension for refusal to submit to a breathalyzer test, pursuant to G. L. c. 90, § 24(1)(f)(1), because an "admission to sufficient facts" was not a "guilty plea," and § 24(1)(d) did not state that an individual who admits to sufficient facts would be considered "convicted." Id. at 233-235. While it does not bear on the present case, we note that the Legislature subsequently amended the statute to include the phrase "admits to finding of sufficient facts." See St. 2012, c. 139, § 98.

Massachusetts. As used in that section, the term "motor vehicle violation" is not restricted to criminal violations; it is defined as "a violation of law, regulation, by-law, or ordinance, except a violation related to parking." Ibid. Similarly, the interstate compact on motor vehicle convictions broadly defines conviction to mean "a conviction of any offense related to the use or operation of a motor vehicle that is prohibited by state law, municipal ordinance, or administrative rule or regulation." G. L. c. 90, § 30B(I)(c). The compact does not require that the conviction be for an offense denominated as criminal.

In short, whether a DWAI conviction is substantially similar to an OUI conviction does not turn on whether DWAI is labeled a criminal offense. As held in Bresten, supra, it turns on the nature of the conduct that must be proved to establish guilt. Id. at 268-269.

2. Withdrawal of prior decision. It is well-established that "[i]n the absence of statutory limitations, administrative agencies generally retain inherent authority to reconsider their decisions." Moe v. Sex Offender Registry Bd., 444 Mass. 1009, 1009 (2005). Here, the stated reason for the withdrawal of the August 16, 2013, decision reinstating the plaintiff's right to operate with restrictions was that one of the three members of the panel was unable to complete deliberations, and justice

required that the matter be heard and decided by a full panel. There is nothing in the record to support the plaintiff's intimation that the stated reason masked some irregularity.  If anything, the withdrawal of the decision had the salutary effect of removing any doubt as to whether a decision signed and issued by only two members of the board was compliant with board procedures or quorum requirements.  Moreover, even if a two-member decision was permissible, the seriousness of the issue presented militated in favor of a decision by a full panel.  In these circumstances, the order withdrawing the prior decision and setting the matter down for a de novo hearing was well within the inherent authority of the board, and was neither arbitrary nor capricious.

<u>Judgment affirmed</u>.